152        C. R. I. & P. R. R. Co. *v.* Fisher.        [Sept. T.

Opinion of the Court.

The Chicago, Rock Island and Pacific R. R. Co.

*v.*

Frank A. Fisher.

Carrier— *liability for not stopping train at passenger's destination.*
Where a certain freight train was in the habit of carrying passengers to a
certain station, and before the company had made any different rule or
regulation in this respect, the plaintiff purchased a ticket for such station,
but was informed by the conductor that he would not stop at such station,
and advised to take passage with another extra train, to which he applied
and was refused passage, and the plaintiff entered the first train, informing
the conductor of the facts, and was by it carried to the next station beyond
the one named in his ticket: *Held,* that the company was liable to the
plaintiff in compensatory damages.

Appeal from the County Court of LaSalle county; the Hon.
Charles H. Gilman, Judge, presiding.

This was an action on the case, by the appellee against the
appellant as carriers. The appellee recovered judgment for
$2.50, from which the appellant appealed.

Mr. Charles H. Lawrence, and Mr. Geo. C. Campbell,
for the appellant.

Mr. Charles H. Bush, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

By the regulations of the company, freight trains No. 13
west, and No. 10 east, on appellant's road are permitted to
carry passengers between Tene and Marseilles, both inclusive,
when such passengers hold regular tickets. Agents were ex-
pressly prohibited from selling tickets for any other freight
trains.

Being desirous of being carried from Ottawa to Marseilles
on freight train No. 10, appellee purchased a ticket at the
company's office at the former station for that purpose. The
train was then at the depot, and was about ready to start.

There were also two extras standing at the station, which usually run a few minutes behind train No. 10. There is evidence tending to show that these extras constitute a part of train No. 10, and are sometimes so designated, although they are under the control of separate conductors. There is, however, other evidence that tends to show they constitute no part of that train, but are in fact separate and independent trains, running on the time of No. 10, in the rear, about one mile distant.

Having purchased his ticket, appellee took his seat in the "caboose" attached to train No. 10. Before he did so, he was told by the conductor he would not stop at Marseilles that night; he had orders to run in advance of regular time to Joliet, and if he took that train he certainly would carry him past Marseilles, and advised him to get on the last extra, as it would probably stop.

The witness Furgerson, who was on the train with appellee, testifies that after he had purchased his ticket, he applied to the conductors of both the extras, and was denied passage, and was told that if No. 10 did not stop at Marseilles, it was certain the extras would not. He then entered the "caboose" with appellee, and told him what the conductors of the extras had said.

The evidence shows very clearly that the company, under its published regulations, was in the habit of carrying passengers on freight train No. 10 east as far as Marseilles, and would stop to let them off. It was the custom of the regular train, and not the extras, to carry passengers. When the train arrived, the agent of the company sold appellee a ticket for passage on train No. 10, from Ottawa to Marseilles. The ticket was for the regular train, and not for extras. He had no right to enter the caboose attached to the extras, for it is in evidence that he knew the regulations of the company. His ticket was only for train No. 10 east, and he was prohibited from using it on any other freight train.

It was the legal right of appellee to be carried on train No. 10. The conductor, however, refused to stop at Marseilles, but carried him to the next station, and there let him off.

The company had never revoked its order to carry passengers on freight train No. 10 east, and the conductor had no right to refuse to receive appellee as a passenger, and it was his plain duty to stop at Marseilles a reasonable time for him to get off. He was not bound to go to the extras, and especially after he was told the conductors of those trains had refused to receive passengers. It is not even pretended the conductor had received any orders not to take passengers for Marseilles. His objection was of his own motion, and purely captious. The law was clearly with appellee, and he ought to have been allowed compensatory damages.

No error appearing in the record, the judgment is affirmed.

*Judgment affirmed.*